UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICIA DOYLE ET AL.                    CIVIL ACTION

VERSUS                                   NO. 13-5524

MICHAEL TREGRE ET AL.                    MAGISTRATE JUDGE
                                         JOSEPH C. WILKINSON, JR.

**ORDER AND REASONS ON MOTIONS;**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

This a civil rights action for damages under 42 U.S.C. § 1983. All parties

consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. §

636(c), Record Doc. No. 12, and trial was scheduled to commence before me without a

jury on October 27, 2014.  Record Doc. No. 15.  On October 3, 2014, the case was

dismissed after a settlement conference conducted by Magistrate Judge Michael B.

North.  Record Doc. Nos. 30 and 31.  At a hearing recorded in open court at the

conclusion of the conference, Magistrate Judge North specifically approved the terms of

the settlement agreement that had been reached by the parties and recited into the record.

Hearing transcript, Record Doc. No. 51-1 at p. 4.

Two motions are currently pending before me in this matter:  (1) Defendants'

Motion to Enforce Settlement, Record Doc. No. 32; and (2) Plaintiffs' Motion to Reopen

Action, Record Doc. No. 35.  Plaintiffs' counsel filed a written opposition to defendants'

motion, which was subsequently supplemented.  Record Doc. Nos. 33, 38, and 40.

Thereafter, plaintiffs' counsel filed a motion to withdraw from their representation, which

was granted by the court because plaintiffs' lawyers faced a conflict of interest with their clients in that they were required to provide testimony contrary to their clients' position that plaintiffs had not agreed to the settlement.  Record Doc. Nos. 39, 41; <u>see</u> La. R. Prof. Conduct 1.7(a).  The court held an evidentiary hearing on the motions in two separate sessions on December 10, 2014 and January 21, 2015.

Having reviewed the complaint; the record; the testimony and exhibits introduced at the evidentiary hearings; the written submissions of the parties and the applicable law, IT IS ORDERED that defendants' motion to enforce the settlement is GRANTED, plaintiffs' motion to reopen this action is DENIED, and plaintiffs' complaint is DISMISSED WITH PREJUDICE.

I.      <u>BACKGROUND</u>

Plaintiff Patricia Doyle is the surviving mother of decedent, Deborah Prine, and the grandmother of plaintiffs Heather and Karen Prine, who are the daughters of decedents Robert and Deborah Prine.  Plaintiffs' complaint alleged the following basic facts:  On August 28, 2012, Robert and Deborah Prine became involved in a violent domestic disturbance at their Reserve, Louisiana, residence, which they shared with Doyle.  Doyle telephoned 911 and summoned the defendant deputies of the St. John the Baptist Parish Sheriff's Office to the residence, based upon her report of the disturbance and request for assistance.  When responding deputies arrived at the scene, Deborah Prine had armed herself with a rifle and was outside the residence.  In the ensuing

2

moments, with Deborah Prine having failed to surrender her rifle when commanded to do so by the deputies and Robert Prine "yelling at the defendant deputies," Deborah Prine was shot  and killed by the deputies.  "In response to witnessing his wife being shot Robert Prine became hysterical.  As he ran towards his wife's body screaming and unarmed he was shot and killed by the defendants . . . ."  Record Doc. No. 12 (Complaint at ¶¶ 8-18).

Before all parties consented to proceed before a Magistrate Judge, I was scheduled to conduct a settlement conference in the case.  After Section 636(c) consent, however, I cancelled the settlement conference, Record Doc. No. 16, consistently with Becker v. Tidewater, Inc., 405 F.3d 257, 260 (5th Cir. 2005), and the conference was instead subsequently scheduled and conducted by Magistrate Judge North.  Record Doc. Nos. 21 and 30.

The record and the evidence received by the court during the evidentiary hearing concerning these motions establishes that the settlement conference occurred in Magistrate Judge North's chambers and courtroom on October 2, 2014, and lasted about two hours.  All three plaintiffs were present in person, together with both of their lawyers, Gary Bizal and William Crull, and counsel for the defendants.  At the conclusion of settlement discussions, Magistrate Judge North summoned a court reporter, took the bench, and the settlement agreement was recorded in open court.

3

According to the transcript of those proceedings, Bizal orally outlined the essential

terms and conditions of the settlement agreement, including a payment of $12,000.00

from defendants to plaintiffs in exchange for dismissal of the case and release of all

claims, with "a non-disclosure clause in the agreement, neither party can indicate the

amount of settlement."[1]   Record Doc. No. 51-1 at p. 3.   Bizal also stated:  "I have the

authority of all of the plaintiffs to proceed with this judgment, your Honor."  Id.  The

court and plaintiffs' counsel then engaged in the following exchange:

> The Court:  Mr. Bizal, . . . .  Do you have full and actual authority
> given to you today by all of your clients to enter into and bind this
> settlement?
> Mr. Bizal:  Yes, I do, your Honor.
> The Court:   Are you satisfied that they're entering into this
> settlement voluntarily, knowingly, and of their own free will?
> Mr. Bizal:  Yes, your Honor.
> The Court:  And are you satisfied that it's their intention today, and
> is it your intention today and desire today on behalf of your clients to enter
> into this settlement and end this litigation?
> Mr. Bizal:  Yes, your Honor, correct.

Id. at p. 4.

---

[1]The parties' non-disclosure agreement in a settlement agreement that is part of the judicial
record is neither applicable to nor enforceable by the court. Brown & Williamson Tobacco Corp. v.
F.T.C., 710 F.2d 1165, 1179 (6th Cir. 1983); In re Enron Corp. Sec., Derivative & ERISA Litig., 623
F. Supp. 2d 798, 838 (S.D. Tex. 2009); Stalnaker v. Novar Corp., 293 F. Supp. 2d 1260, 1263-64 (M.D.
Ala. 2003) (citing Jessup v. Luther, 277 F.3d 926 (7th Cir. 2002); Boone v. City of Suffolk, 79 F. Supp.
2d 603 (E.D. Va. 1999)). The filing of these motions has necessitated both the revelation of the
settlement amount and its inclusion in the court's judgment.

As plaintiff Heather Prine later testified, all three plaintiffs sat in the courtroom throughout this exchange, observing and listening, and not one uttered a single word of objection or disagreement, either to the court or to their lawyers.

II.    FINDINGS OF FACT

I find the testimony of attorneys Bizal and Crull entirely credible.  Their calm, reasoned manner of testifying and demeanor on the witness stand inspired confidence that their recollection of events was accurate.  Their testimony was both internally consistent and consistent with each other's credible testimony and the corroborating documentary evidence.  They displayed integrity and a high degree of professional responsibility in dealing with extremely difficult clients in an emotionally charged setting, and I accept their testimony in its entirety.

Bizal and Crull testified that they conducted a lengthy pretrial investigation and evaluation of the facts surrounding the incident and undertook extensive discovery, including 14 depositions, review of an independent report of the incident by the Louisiana State Police and hiring a private investigator to gather additional evidence. After evaluating all of this evidence, the attorneys' professional judgment was that plaintiffs had a minuscule likelihood of prevailing on the merits at trial.  Although neither the lawyers nor plaintiffs were happy with that outcome, the lawyers based their advice on thorough investigation, clear-headed evaluation and prudent professional judgment, and plainly communicated that advice to their clients.  Moreover, to accommodate the

5

settlement, both lawyers waived their fees and Bizal waived thousands of dollars in costs that he had paid.

Each attorney testified that plaintiffs had authorized them to bind the settlement agreement during the October 2 settlement conference, right before the settlement was placed on the record.  They confirmed the content of the transcript that none of the plaintiffs had raised any objection or indicated disagreement in any way when the settlement agreement was recited and bound in open court.  In fact, they testified that counsel accompanied the three plaintiffs after the conference as they left the court, and all plaintiffs expressed relief that the litigation had been concluded, without any indication that they wished to disavow the settlement.

Both the testimony and the documentary evidence introduced at the evidentiary hearing are clear that plaintiffs waited four days after the settlement conference before advising that they did not wish to settle the case.  In Joint Exhibit A, Record Doc. No. 38-1, an email sent by Heather Prine to Gary Bizal dated October 6, 2014, the Prine sisters stated in relevant part:

> We are extremely upset that we believe we were pressured and bullied on Thursday, Oct. 2, 14 [sic] to listen in silence as you agreed to the ridiculous settlement amount of $12,000.  We told you repeatedly that we rejected that low number . . . .  Gary's statement "we cannot leave until this is settled" and the raising of Gary's voice pressing us; along with the fact that we felt we were left with NO choice at all because we were being threatened with a $50,000 lawsuit on Gary and Crull's behalf if we were to pursue the case of our parents [sic] death, was certainly too much pressure on us!  Karen Prine was distraught and never commented on any agreement

6

at all.  Our very upset and elderly grandmother went into a panic attack and we all felt like we were being held hostage since Gary drove us over in his vehicle and was apparent that Gary did not want to take us back to my car.

In Joint Exhibit B, a followup email sent "on behalf of" all three plaintiffs and dated November 4, 2014, almost a month later and after the two motions had been filed, Heather Prine stated in relevant part:  "[A]ll three of us, my grandmother (Patricia Doyle), sister (Karen Prine), and myself (Heather M. Prine); all believe that we did not freely and voluntarily [ ] to the ridiculously low settlement of $12,500 [sic] . . . ."

Although all three plaintiffs appeared in person on the first day of the evidentiary hearing, only one testified under oath.  The testimony of plaintiff Heather Prine, daughter of the decedents, was credible in part, essentially concerning the sequence of events including and after the October 2, 2014 settlement conference.  However, her testimony that she and the other plaintiffs did not authorize their lawyers to settle the lawsuit is clearly not credible and contradicted by her own internally inconsistent testimony, by the transcript of the settlement hearing and by the credible testimony of both Bizal and Crull.  Heather Prine testified in a confused, hostile and misinformed manner that revealed her self-serving motives and limited understanding of the relevant issues and of the reasons for her lawyers' advice to settle the lawsuit.  I find her testimony that she and the other plaintiffs never authorized the settlement not credible.

Specifically, Prine testified that the transcript of the settlement confirmation hearing is accurate, but she stated generally that during the two-hour settlement

conference preceding it, her own counsel had threatened, pressured and bullied the three plaintiffs into the settlement. Bizal flatly and credibly denied this alleged behavior, and Heather Prine's testimony was so self-contradictory, hyperbolic, unduly defensive and hostile that it undermined any credibility that might have been assigned to her protestations that the settlement had been involuntarily coerced. For example, she testified that plaintiffs "were never interested in any kind of settlement that day," while also describing active discussion and consideration – though reluctant – with her own counsel of settlement offers during the conference and offering two of her own emails into evidence, which stressed disappointment not entirely with settlement alone, but with its "low" monetary amount. Prine testified that Bizal "pressured and bullied" plaintiffs into the settlement, becoming so angry and intimidating during the conference that he became red in the face and began "spitting," a description so inconsistent with and unlike this lawyer's demeanor before this court – not only in this case but in dozens of others in which he has appeared during the past 20 years – as to be wholly incredible. She alleged that her lawyers "threatened us with a $50,000 lawsuit if we proceeded to trial," an obvious mischaracterization or misunderstanding of her counsels' own credible testimony that they had prudently advised plaintiffs of the risks posed by an anticipated Rule 68 offer of judgment proffered by defense counsel, not their own attorneys.

Heather Prine repeatedly denied speaking at any time during the settlement conference with Magistrate Judge North, a statement so contrary to ordinary settlement

8

conference proceedings in this court that it strained credulity.  In addition, Prine's testimony that she exchanged no words with Magistrate Judge North during the settlement conference and that she did not understand that she was free to say something to the judge to object during recordation of the settlement agreement in open court is not credible.  Prine clearly demonstrated in the evidentiary hearing before me no hesitation whatsoever in saying anything that might be on her mind while in court proceedings before a robed judge presiding from the bench.

Most significantly, however, Prine clearly testified about an exchange among plaintiffs and their counsel during the settlement conference that she admitted indicated assent by herself and the other two plaintiffs to the settlement.  She testified that during the settlement conference, after defendants had twice raised their offer to $12,000.00, she asked her grandmother Doyle "what she wanted to do, and she just turned around and looked at me and said that she couldn't bear this anymore, that she couldn't go through with this anymore if this was the way it had to be.  I said 'Whatever,' those were my words, 'whatever' . . . to Gary [Bizal] when he asked if I would accept the offer finally, for the last time."  She said this exchange occurred while Magistrate Judge North was taking the bench to go on the record to begin the settlement confirmation hearing.  On cross-examination, Prine testified that when her grandmother indicated that she wanted the lawsuit over with, "I felt bad for her and I wanted to get her out of there, yes."  She

denied that her grandmother had ever agreed to the $12,000.00 settlement, but she reiterated that "I made a comment 'whatever,' like it was kind of an agreement."

Prine alleged that her lawyers told her they could not leave the courthouse until the case was settled. Bizal credibly explained that he had told them instead, when they refused to say anything at all when the $12,000.00 offer was conveyed, that they would not be leaving until they at least responded to the offer. Heather Prine testified that she did not know if they could leave or not, but she did not ask the judge or object to the settlement because "I didn't know I could speak to the judge." She stated that she said nothing to the judge to object to what was being said during the course of the hearing confirming the settlement because "I had been brainwashed by that time."

Heather Prine was present at the October 2, 2014, court session at which the settlement was recorded, yet she waited four days to advise Bizal by email that plaintiffs wanted to disavow the settlement. She unpersuasively explained that she delayed four days after the settlement conference before sending the email to her lawyers in which she renounced the settlement because she did not realize how badly she had been treated until she spoke to another, unnamed attorney during that interim.

During the first day of the evidentiary hearing on December 10, 2014, plaintiffs requested and were granted time to retain new counsel to represent them, and the evidentiary hearing was continued and left open to accommodate their request. When it recommenced six weeks later on January 21, 2015, Heather Prine confirmed that no

10

new lawyer had been retained, and plaintiffs Doyle and Karen Prine failed to appear.

Heather Prine then offered her own additional testimony and two documents explaining

the other two plaintiffs' failure to appear and decision not to provide their own

supporting testimony.  Plaintiff's Exhibit "C," a letter from a doctor at St. James Primary

Care to Dr. Jack Murphy dated August 25, 2014, written more than five months earlier,

described Doyle's medical condition as including "[g]eneralized anxiety disorder . . .

originally diagnosed many years ago," in which "[t]rue panic attacks occur in addition

to generalized anxiety."  Joint Exhibit 1 was an email from Patricia Doyle addressed "To

whom it may concern," which stated in pertinent part:

> This is an email from Patricia Doyle to inform the court that I am
> withdrawing from these court procedures.  I never hired or signed any
> contract with Mr. Gary Bizal or William Crull.  Indeed I was surprised to
> find my name on the lawsuit . . . .  I asked Heather twice to remove my
> name from the law suit.  She was told it has been filed, leave it like it is.
> My only role in this matter is; I am a witness . . . .  I asked the court to
> dismiss the settlement that occurred on 10/02/14 because there is a conflict
> between us three and our attorneys . . . .  The conflict actually began the
> day they put my name on that lawsuit . . . .

Contrary to Prine's insinuations, this email supports a finding that Doyle, having

never wished to participate as a party in the litigation, specifically desired that it come

to an end through this settlement.

Prine's closing accusation on the second day of the evidentiary hearing that

"everyone in the courtroom" during the settlement confirmation hearing, including the

presiding Magistrate Judge, was "on the take," which she immediately denied having

made, despite the clarity of her accusation made only moments earlier, was an outrageous and wholly unsupported fabrication, further undermining her credibility.

Based upon the foregoing background and facts, I find that all three plaintiffs authorized their lawyers to enter into and bind this settlement, that plaintiffs' counsel acted properly and with authority in connection with the settlement conference and the settlement confirmation hearing, and that plaintiffs knowingly and voluntarily agreed to the settlement and authorized their lawyers to bind it.

III.   CONCLUSIONS OF LAW

Having found the settlement reasonable and incorporated it into its dismissal order, Record Doc. Nos. 31 (conditional dismissal order) and 51-1 at p. 4 (transcript of settlement hearing), this court has jurisdiction to enforce the settlement agreement. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378-82 (1994).

"Whereas federal courts sitting in diversity apply state law when determining the validity of a settlement agreement, the Fifth Circuit has long held that the enforceability or validity of settlement agreements are [sic] determined by federal law 'where the substantive rights and liabilities of the parties derive from federal law.'" Turner Marine Fleeting, Inc. v. Quality Fab & Mech., Inc., No.02-0091, 2002 WL 31819199, at *4 (E.D. La. Dec. 13, 2002) (quoting Mid-South Towing Co. v. HarWin, Inc., 733 F.2d 386, 389 (5th Cir. 1984)) (additional citations omitted); accord Chaplin v. NationsCredit Corp., 307 F.3d 368, 372 (5th Cir. 2002) (action for ERISA benefits); Macktal v. Sec'y of

Labor, 923 F.2d 1150, 1157 n.32 (5th Cir. 1991) (federal whistleblower action) (citing Town of Newton v. Rumery, 480 U.S. 386, 392 (1987) (Section 1983 action)); Zim Israel Navig. Co., Ltd. v. Special Carriers, Inc., 800 F.2d 1392, 1394 (5th Cir. 1986) (admiralty action); Mid-South Towing Co., 733 F.2d at 389 (same); Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981) (Title VII action); Offshore Marine Contractors, Inc. v. Laborde Marine Crewboats, LLC, No. 04-1088, 2005 WL 3533706, at *1 (E.D. La. Dec. 1, 2005) (admiralty action).

In this case, the parties' rights and liabilities derive from federal and state law. However, the basis of original jurisdiction in this court is a federal statute, with plaintiffs' state law claims brought under the court's supplemental jurisdiction. In such cases, the court applies federal law to questions of the validity or enforceability of a settlement agreement. Del Bosque v. AT & T Advertising, L.P., 441 F. App'x 258, 259, 260-61 (5th Cir. 2011) (citing Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir. 1981)).

Thus, this court will apply "the federal common law of contract interpretation in deciding whether to enforce a settlement agreement" in this action brought under 42 U.S.C. § 1983 and Louisiana tort law. Turner Marine Fleeting, Inc., 2002 WL 31819199, at *4; accord Del Bosque, 441 F. App'x at 261.

Although an attorney may not compromise a matter without the consent of his clients, the attorney of record is presumed to have authority to settle his clients' case, and

13

the burden to rebut this presumption falls on the clients who contend that their attorney had no such authority. Quesada v. Napolitano, 701 F.3d 1080, 1083 (5th Cir. 2012); In re Artha Mgmt. Inc., 91 F.3d 326, 328 (2d Cir. 1996); Anderson v. Flexel, 47 F.3d 243, 249 (7th Cir. 1995); Michaud v. Michaud, 932 F.2d 77, 80 (1st Cir. 1991); Greater Kan. City Laborers Pension Fund v. Paramount Indus., 829 F.2d 644, 645 (8th Cir. 1987); Mid-South Towing Co., 733 F.2d at 390; Terrain Enters., Inc. v. W. Cas. & Sur. Co., 774 F.2d 1320, 1322 (5th Cir. 1985).

Under Louisiana law, an active component of the federal common law applied in this court, a contract is formed by the consent of all parties established through offer and acceptance. The parties must freely give their mutual consent to the contract. "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927. Silence may also be a form of inaction indicating consent, provided that the silence "leads the offeror to reasonably believe that a contract has been formed." Id. art. 1942. No contract exists unless these requirements have been met. Taita Chem. Co. v. Westlake Styrene Corp., 246 F.3d 377, 386-87 (5th Cir. 2001); Ingraffia v. NME Hosps., Inc., 943 F.2d 561, 565 (5th Cir. 1991) (citing La. Civ. Code Ann. arts. 1918, 1927, 1966, 1971, 2029 cmt. b; Higgins v. Spencer, 531 So. 2d 768, 770 (La. App. 1st Cir. 1988); Thebner v. Xerox Corp., 480 So. 2d 454, 457 (La. App. 3d Cir. 1985)); Hale v. M.J.J.K., LLC, No. 12-1515, 2014 WL 2429376, at *4 (E.D.

14

La. May 29, 2014) (citing La. Civ. Code arts. 1927, 1942; <u>Taita Chem. Co.</u>, 246 F.3d at 386-87; <u>Cajun Constructors, Inc. v. Fleming Constr. Co.</u>, 951 So. 2d 208, 214 (La. Ct. App. 1st Cir. 2006)); <u>Atel Maritime Investors, LP v. Sea Mar Mgmt., L.L.C.</u>, No. 08-1700, 2010 WL 1978261, at *2 (E.D. La. 2010) (citing <u>Ingraffia</u>, 943 F.2d at 565); <u>Basco v. Wal-Mart Stores, Inc.</u>, 216 F. Supp. 2d 592, 602 (E.D. La. 2002) (citing La. Civ. Code art. 1927).

A settlement agreement is binding and enforceable when it is either reduced to writing or recorded at a hearing in open court, as was done in this case.  <u>See</u> La. Civ. Code art. 3072.

Under federal common law, apparent authority "'exists where the principal engages in conduct that "reasonably interpreted" causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.' The burden of proving an agency relationship falls on the person asserting its existence . . . ." <u>Lamar Co. v. Nat'l Labor Relations Bd.</u>, 127 F. App'x 144, 148 (5th Cir. 2005) (quoting <u>Restatement (Second) of Agency</u> § 27 (1992)).  "[A]pparent authority to do an act is created as to a third person by written or spoken words <u>or any other conduct of the principal</u> which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." <u>Restatement (Second) of Agency</u> § 27 (emphasis added).

In this case, the documentary evidence and testimony of the credible witnesses establishes that the three plaintiffs acted together in deciding to settle the case. Plaintiffs' conduct at the settlement conference reasonably led counsel to believe that they agreed to the settlement. In addition, the testimony of Bizal and Crull made clear that the lawyers actually and reasonably believed that plaintiffs were instructing them to settle the case on their behalf.

I find that plaintiffs Heather Prine and Patricia Doyle made statements during the settlement conference among themselves and to their counsel clearly indicating that they agreed, although reluctantly, with their lawyers' recommendation to settle this case. Karen Prine's silence was reasonably interpreted as her voluntary consent. In addition, all three plaintiffs sat silently in the courtroom, without lodging any objection whatsoever, thereby giving the clear appearance of assent under applicable law, while their counsel recited the terms and conditions of the settlement and clearly announced that he had authority expressly given to him by all three to bind the settlement. Under these circumstances, there is no question that Bizal had actual and express authority from plaintiffs to make the statements made to Magistrate Judge North on the record to bind settlement of the case.

Moreover, under the factual circumstances giving rise to the tragic accident upon which their lawsuit was based and the entitlement of all defendants to the powerful defense of qualified immunity, I conclude that the amount of the settlement reflected a

16

wholly reasonable professional assessment of the extremely small likelihood that plaintiffs might have prevailed on the merits at trial.  See Rice v. ReliaStar Life Ins. Co., 770 F.3d 1122, 1134 (citing Harris v. Serpas, 745 F.3d 767, 770, 772-73 (5th Cir. 2014); Elizondo v. Green, 671 F.3d 506, 510 (5th Cir. 2012); Rockwell v. Brown, 664 F.3d 985, 993 (5th Cir. 2011); Ramirez v. Knoulton, 542 F.3d 124, 127, 131 (5th Cir. 2008)).

I find that the credible evidence establishes that counsel had plaintiffs' authority to settle the case when they stood before Magistrate Judge North, in the presence of their clients, and that plaintiffs voluntarily and knowingly consented to the settlement.  Their later actions attempting to disavow the settlement amount to nothing more than the kind of second-guessing in hindsight indicative of "buyer's remorse."  The completely credible testimony of Bizal and Crull, the joint manner in which plaintiffs conducted themselves throughout this litigation and the undisputed, contemporaneous exchange that occurred in open court on the record as reflected in the transcript of the October 2, 2014 hearing before Magistrate Judge North, establish that plaintiffs gave their counsel authority to settle their claims on the terms dictated into the court record.  A binding, enforceable settlement agreement was thereby formed, which plaintiffs cannot repudiate after the fact.

## CONCLUSION

To whatever extent, if any, that the foregoing findings of fact constitute conclusions of law and vice versa, they are adopted as such.  For the foregoing reasons,

**IT IS ORDERED** that defendants' motion to enforce the settlement is GRANTED,

plaintiffs' motion to reopen this action is DENIED, and plaintiffs' complaint is

DISMISSED WITH  PREJUDICE, each party to bear its own costs of this proceeding.

Judgment will be entered accordingly.

New Orleans, Louisiana, this ____9th____ day of February, 2015.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE


THE CLERK IS DIRECTED TO
NOTIFY ALL PARTIES, INCLUDING
PLAINTIFFS' PRIOR COUNSEL OF RECORD,
GARY W. BIZAL AND WILLIAM L. CRULL, III
VIA FIRST CLASS UNITED STATES MAIL,
in addition to any electronic notice previously
requested by these parties

18